# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SUSAN LYNN BELMORE,**

    Plaintiff,

  v.                                   Case No. 17-CV-686

**COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

---

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Susan Belmore alleges that she is unable to work due to a back injury and diabetes. After the Social Security Administration denied her application for disability benefits, Ms. Belmore requested and received a hearing before an administrative law judge. The ALJ determined that Ms. Belmore remained capable of performing her past job notwithstanding her impairments. Ms. Belmore now seeks judicial review of that decision.

Ms. Belmore generally argues that the ALJ did not fully consider the limitations stemming from her impairments. The Commissioner contends that the ALJ did not commit an error of law in reaching his decision and that the decision is otherwise supported by substantial evidence. Because the Court finds that the Commissioner's decision is supported by substantial evidence, his decision denying Social Security benefits to Ms. Belmore will be affirmed.

I.  **Background**

Susan Lynn Belmore was born on September 27, 1962. Transcript 226, ECF Nos.9-2–9-17. She waitressed during high school and, after graduating, worked for several years as a banking representative. Tr. 239–42, 248. Ms. Belmore then spent about twenty years as a business analyst but was laid off in March 2011 due to worsening health issues. Later that year, she divorced from her husband of nearly thirty years. Tr. 227.

In November 2012, Ms. Belmore applied for disability insurance benefits, alleging that she became disabled on March 18, 2011, because of pancreatitis, diabetes, and high blood pressure. Tr. 224–27, 237–47. After the SSA denied the application initially, Tr. 117–25, and upon reconsideration, Tr. 126–37, Ms. Belmore requested a hearing before an ALJ, *see* Tr. 168–69.

The administrative hearing was held on September 13, 2016, before ALJ Patrick J. Toal. *See* Tr. 16–116. Ms. Belmore had a non-attorney representative at the hearing. *See* Tr. 16–21. The representative amended Ms. Belmore's alleged onset date to June 12, 2012. Tr. 30–32. At the time of the hearing, Ms. Belmore was living by herself in a condo in Franklin, Wisconsin. Tr. 27, 226, 265. Ms. Belmore testified that she was unable to work due to pain stemming from her diabetes and back fractures. Tr. 67. Ms. Belmore also indicated that she needed to take a ten to fifteen-minute break every ninety minutes when doing household chores and that she received a lot of help from her sister. Tr. 35–50. According to Ms. Belmore, she could stand for five minutes and walk for twenty minutes before needing to stop and

sit down. Tr. 70–71. Ms. Belmore further testified that she had difficulty grasping objects with her hands, reaching, and concentrating. Tr. 67–71. The ALJ also heard testimony from a medical expert (Darryl Cherdron, M.D.), a psychological expert (Donna Mary Veraldi, Ph.D.), and a vocational expert (Spencer Mosley). *See* Tr. 33–34, 72–84, 86–89, 91, 97, 100–02, 104–10, 112–13, 824–28.

On September 28, 2016, the ALJ issued a decision unfavorable to Ms. Belmore. Tr. 138–57. The ALJ determined that (1) Ms. Belmore had not engaged in substantial gainful activity since her amended alleged onset date; (2) Ms. Belmore suffered from seven "severe" impairments: degenerative change to the thoracic spine, chronic T7 deformity, osteoarthritis, hypertension, diabetes mellitus, a bunion deformity and degenerative change of the right foot, and status post fracture of the right humerus; (3) Ms. Belmore did not suffer from an impairment or combination of impairments that met or medically equaled the severity of a presumptively disabling impairment; Ms. Belmore had the residual functional capacity to perform a restricted range of light work; and (4) Ms. Belmore was capable of performing her past job as a computer systems hardware analyst. *See* Tr. 141–52. Based on those findings, the ALJ concluded that Ms. Belmore was not disabled.

Thereafter, Ms. Belmore requested review of the ALJ's decision by the SSA's Appeals Council. Tr. 12–15. On March 30, 2017, the Appeals Council denied Ms. Belmore's request for review, Tr. 1–6, making the ALJ's decision the final decision

of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

Ms. Belmore filed this action without the assistance of counsel on May 16, 2017, seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). *See* Complaint, ECF No. 1. The matter was reassigned to this Court after the parties consented to magistrate judge jurisdiction. *See* Order Reassigning Case on Consent, ECF No. 10; *see also* Consent to Proceed Before a Magistrate Judge, ECF Nos. 3, 7 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)). It is now fully briefed and ready for disposition. *See* Plaintiff's Brief, ECF No. 14; Defendant's Memorandum in Support of the Commissioner's Decision, ECF No. 18.

## II.  Standard of Review

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations

4

omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

In reviewing the record, this Court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) and *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). The ALJ's decision must be reversed "[i]f the evidence does not support the conclusion." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569). Likewise, reviewing courts must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121 (citations omitted).

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598,

5

602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

## III. Discussion

Ms. Belmore maintains that she is disabled and that the Commissioner's decision to the contrary is not supported by substantial evidence and is contrary to law and regulation. *See* Compl. p. 4.

### A. Legal framework

Under the Social Security Act, a person is "disabled" only if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). The disability must be sufficiently severe that the claimant cannot return to her prior job and is not capable of engaging in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the SSA must follow a five-step sequential evaluation process, asking, in order: (1) whether the claimant has engaged in substantial gainful activity since her alleged onset of disability; (2) whether the claimant suffers from a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the

criteria of any impairment listed in the SSA regulations as presumptively disabling; (4) whether the claimant's RFC leaves her unable to perform the requirements of her past relevant work; and (5) whether the claimant is unable to perform any other work. *See* 20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four." *Id.* (citing *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004)). Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

**B. Legal analysis**

Ms. Belmore asserts that she is disabled based on her spinal injury and diabetes. According to Ms. Belmore, the pain stemming from her spinal injury is immobilizing and prohibits her from performing and sustaining a given task. She is unable to walk a reasonable distance and uses a cane on her worst days. Ms. Belmore has been prescribed medication for her back impairment and has participated in physical therapy to no avail. This injury, according to Ms. Belmore, cannot be repaired and will remain for the rest of her life. Ms. Belmore further alleges that her diabetes results in abdominal pain, trouble breathing, confusion, trouble concentrating, weakness, and fatigue. *See* Pl.'s Br. 2.

7

To the extent Ms. Belmore is describing her current capabilities and limitations, the ALJ's decision must be affirmed. As the ALJ made clear at the administrative hearing, *see, e.g.*, Tr. 35, the disability determination was limited to the four-year period from Ms. Belmore's amended alleged onset date (June 12, 2012) to the date of the ALJ's decision (September 28, 2016). If Ms. Belmore's conditions have worsened since then, she must file a new application for benefits.

Ms. Belmore also challenges the ALJ's RFC assessment. Specifically, she maintains that the ALJ erred in relying on the opinions of the non-examining medical experts, failed to consider her limitations in performing household chores, and ignored the side effects resulting from her medications (including dizziness, drowsiness, fatigue, unsteadiness, confusion, and weakness). Ms. Belmore therefore argues that the ALJ's step-four finding that she remained capable of performing her past relevant work is not supported by substantial evidence. *See* Pl.'s Br. 1–2.

Between steps three and four of the sequential evaluation process, the ALJ must determine the claimant's RFC—that is, the most she can do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); *see also* Social Security Ruling No. 96-8p, 1996 SSR LEXIS 5, at *5 (July 2, 1996). ALJs must assess a claimant's RFC "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements.'" SSR No. 96-8p, 1996 SSR LEXIS 5, at *5–6; 20 C.F.R. § 404.1545(a)(3). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

nonmedical evidence (e.g., daily activities, observations)." SSR No. 96-8p, 1996 SSR LEXIS 5, at *19. "The [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

Here, the ALJ determined that Ms. Belmore had the RFC to perform light work[1] with the following additional restrictions: no climbing ladders, ropes, or scaffolds; no more than frequent bending, squatting, stooping, balancing, or climbing stairs; no more than occasional crawling; avoidance of unprotected heights and hazardous machinery; and the ability to take a five-minute, on-task break after walking for fifty-five minutes. Tr. 146–47. This assessment mimicked the capabilities and limitations opined by Dr. Cherdron—the medical expert who testified at the administrative hearing—an opinion afforded "great weight" by the ALJ. Tr. 150. The ALJ also based his RFC assessment on the other medical opinions in the record, the objective medical evidence, and the overall record. *See* Tr. 146–51.

The ALJ's decision to give great weight to Dr. Cherdron's opinion is supported by substantial evidence. According to the ALJ, Dr. Cherdron's opinion was supported by the diagnostic imaging, the findings upon physical examination, and Ms. Belmore's reported activities. Tr. 150. X-rays from April 2014 showed no abnormalities associated with the lumbar spine. Tr. 762–63. A few months later, an x-ray imaging report indicated that a mild compression fracture could not be ruled out. Tr. 636. A subsequent MRI of the thoracic spine did demonstrate chronic T7

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

9

compression deformity, but it also revealed that Ms. Belmore had no acute thoracic spine fracture, no significant malalignment, and normal appearance of the thoracic spinal cord. *See* Tr. 672–73. MRIs from September 2014, Tr, 681–82, and March 2015, Tr. 705–06, showed no significant abnormalities. The ALJ therefore reasonably concluded that the inconsistencies between Ms. Belmore's complaints and the diagnostic imaging evidence suggested symptom exaggeration. *See Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) (citing *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008)).

Treatment notes similarly reflect that Ms. Belmore's functional limitations were not as significant as she alleged. Upon exam, Ms. Belmore demonstrated normal range of motion and, at worst, minimal tenderness. *See* Tr. 690, 702, 727, 744. Physical therapy notes indicate that Ms. Belmore generally exhibited normal strength, only slight limitations performing extensions and rotations, and a mildly abnormal gait. *See* Tr. 493, 557–58, 568–69, 579–80, 590–91. Those progress notes further indicate that a TENS unit provided pain relief, Tr. 547, and that Ms. Belmore exhibited improvement during the therapy sessions, *see* Tr. 527, 591.

Furthermore, the ALJ's RFC assessment accommodated Ms. Belmore's limitations in performing daily activities. Ms. Belmore lived alone and reported being capable of caring for herself, cooking simple meals, taking out the trash, and shopping in stores. *See* Tr. 265–72. At the administrative hearing, Ms. Belmore testified that her impairments prohibited her from completing all her household chores in a single day and that she needed to take hourly breaks from activity. Tr.

35–43. The ALJ accounted for this limitation in his RFC assessment, finding that Ms. Belmore required a five-minute break after walking for fifty-five minutes. Tr. 147. The vocational expert concluded that, despite this limitation, Ms. Belmore remained capable of performing light work. Tr. 101–04. And even if Ms. Belmore were limited to sedentary work, she could still perform her past job as a computer systems hardware analyst. *See* Tr. 88, 104.

The evidence in the record therefore supported the weight the ALJ assigned to Dr. Cherdron's opinion, notwithstanding that he never examined Ms. Belmore. Indeed, the record did not contain any medical opinions from an examining source.

Finally, the record does not support Ms. Belmore's claim of experiencing debilitating side effects from her medications. For one, she has not cited any objective evidence to support this complaint. Moreover, Ms. Belmore did not mention medication side effects at the administrative hearing, *see* Tr. 16–116, and she denied experiencing such side effects when filling out her disability and function reports, *see* Tr. 272, 278, 284–85. The ALJ therefore had no reason to consider medication side effects when fashioning Ms. Belmore's RFC.

## IV. Conclusion

For all the foregoing reasons, the Court finds that the ALJ did not commit reversible error in finding that Ms. Belmore was not disabled as of June 2012. The Court therefore will affirm the ALJ's decision denying Ms. Belmore's claim for Social Security benefits.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of September, 2018.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge